United States District Court

For the Northern District of California

1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                           NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12   JO DEE SCHMIDT, et al.,

13              Plaintiffs,                     No. C 08-5809 PJH

14        v.                                    **ORDER GRANTING CITY OF WALNUT
                                                CREEK'S MOTION TO DISMISS**
15   JOHN HOOVER, et al.,

16              Defendants.
     _____/

17        Before the court are defendants' motions to dismiss the complaint in the above-

18   entitled action.  Having read the parties' papers and carefully considered their arguments,

19   and good cause appearing, the court hereby GRANTS the City of Walnut Creek's motion

20   and DENIES John Hoover's motion.

21                                  **BACKGROUND**

22        Defendant City of Walnut Creek ("the City") maintains an area known as Walnut

23   Creek Open Space ("WCOS"), which consists of 2700 acres of undeveloped oak woodland,

24   savannah, and chaparral.  The City issues grazing permits and contracts with local

25   ranchers who graze cattle and bulls in WCOS.  There are also hiking trails in the WCOS

26   area, and  Walnut Creek Municipal Code § 11-1.507(b) permits unleashed dogs in WCOS.

27        Plaintiffs allege that plaintiff Jo Dee Schmidt was hiking in the Acalanes Ridge

28   Recreation Area, part of WCOS, on October 20, 2007.  She had just passed another hiker

**United States District Court**
For the Northern District of California

1   and that hiker's unleashed dog when she crested a hill and came upon a bull or cow

2   (plaintiff isn't sure which), belonging to defendant John Hoover, a local rancher.  The bull or

3   cow charged her, trampling her and causing severe injuries.  Ms. Schmidt spent 11 days in

4   the hospital.  In addition to her physical injuries, she now suffers from post-traumatic stress

5   disorder.

6       Ms. Schmidt and her husband, plaintiff Paul Schmidt, filed this action on December

7   31, 2008, against the City and Hoover.  The complaint alleges negligence, by Ms. Schmidt,

8   against Hoover; loss of consortium, by Mr. Schmidt, against Hoover; and a claim of state-

9   created danger resulting in denial of civil rights and privileges, under 42 U.S.C. § 1983, by

10  Ms. Schmidt, against the City.

11      Plaintiffs allege that Hoover was aware that the bull or cow that trampled Ms.

12  Schmidt had a "dangerous nature," and that he also had prior knowledge of the high

13  probability of a dangerous confrontation between his bulls and cattle and the hikers who

14  use WCOS.  Plaintiffs assert that Hoover failed to warn against this dangerous situation in

15  conscious disregard of the rights and safety of the hikers who use WCOS.

16      In addition, plaintiffs claim that the presence of unleashed dogs in WCOS increases

17  the likelihood that cattle and bulls will view the presence of dogs and humans as a threat to

18  their offspring.  Plaintiffs assert that the City knows that the areas in which it permits

19  unleashed dogs also contain unfenced bulls, cattle, and calves.  Plaintiffs claim that the

20  presence of the dogs and humans in these "grazing areas" has resulted in several injury-

21  producing incidents involving bulls, cattle, people, and dogs in WCOS and other East Bay

22  parks over the past several years, in which bulls and cattle have trampled and run over

23  people and dogs, often doing serious injury to the people and the dogs.

24      The City now moves to dismiss the claim asserted against it (the third cause of

25  action brought under § 1983) for failure to state a claim.  Hoover also moves to dismiss the

26  § 1983 cause of action for failure to state a claim.  In addition, Hoover moves to dismiss the

27  complaint for lack of subject matter jurisdiction, on the basis that without the federal claim,

28  this court lacks jurisdiction over the remaining state claims.

United States District Court

For the Northern District of California

**DISCUSSION**

A.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.  Rule 8(a)(2) requires that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are taken as true. Id.  However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 550 U.S. at 555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.  A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 557-58.

B.    The City's Motion

The City argues that the third cause of action should be dismissed because the complaint fails to allege a violation of a right secured by the United States Constitution.  In particular, the City contends that not every state law violation gives rise to a substantive due process violation.  The City notes that in DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189 (1989), the Supreme Court  specifically addressed the question whether substantive due process rights afford individuals the right of government protection from third-party conduct.  The Court held that "a State's failure to protect an individual

United States District Court
For the Northern District of California

1    against private violence simply does not constitute a violation of the Due Process Clause."

2    Id. at 197.

3          Here, the City argues, the complaint fails to allege a violation of constitutional rights,

4    as there is no basis for equating the allowance of cattle grazing in open spaces with

5    deprivation of constitutional rights of liberty and bodily integrity.  The City asserts that there

6    is no constitutional right to be free from a cow attack, just as there is no constitutional right

7    to be free from trip hazards in a public sidewalk.

8          The City contends that the essence of the § 1983 claim is the assertion that the City

9    deprived Ms. Schmidt of substantive due process by failing to protect her from private

10   violence – the attack by the cow or bull owned by defendant Hoover.  However, the City

11   asserts, the Due Process Clause does not confer a constitutional right to governmental

12   protection of this kind, arguing that the substantive due process claim amounts to nothing

13   more than an assertion that the City should have protected Ms. Schmidt from tortious

14   conduct by a non-State actor, or that it should not have engaged in allegedly negligent

15   conduct.  .

16         In response to the suggestion in the complaint that the City is liable under the "state-

17   created danger" exception to the general rule that there is no substantive due process right

18   to protection by the state from private action, the City argues that plaintiff cannot rely on

19   this exception because she does not allege that the City was deliberately indifferent to her

20   well-being.

21         Four months after the Supreme Court issued its ruling in DeShaney, the Ninth Circuit

22   recognized the "state created danger theory" in Wood v. Ostrander, 879 F.2d 583 (9th Cir.

23   1989).  In that case, the police officer arrested the driver of a car and impounded a vehicle

24   which left the passenger, Wood, stranded in a high crime area early in the morning where

25   she was attacked.  The Ninth Circuit found that the governmental actors disregard of

26   Wood's safety amounted to deliberate indifference, and held that a substantive due process

27   claim could be established where the police create a danger to an individual.  Id. at 558.

28         Here, the City argues, the issuance of grazing permits is not the kind of affirmative,

United States District Court

For the Northern District of California

1   deliberately indifferent conduct necessary to trigger substantive due process protections.

2   Similarly, the City asserts, the Walnut Creek Municipal Code provision permitting hikers to

3   walk their unleashed dogs in WCOS does not implicate Ms. Schmidt's substantive due

4   process rights.  Thus, the City argues, under the facts pled, the City's actions did not create

5   the danger that caused the injury to Ms. Schmidt.

6          The City also contends that its alleged "inaction" – the alleged failure to respond to

7   prior incidents of bull or cow attacks in the WCOS – cannot be fairly considered as having

8   created the danger that resulted in the harm to Ms. Schmidt.  In the complaint, plaintiffs

9   allege only that the City was "aware" of those purported prior incidents, and the danger that

10  unfenced bulls and cows posed to hikers in the WCOS.  The City argues that such

11  conclusory allegations and the unwanted inferences drawn by plaintiffs are insufficient to

12  support a claim that City officials exhibited "deliberate indifference" to Ms. Schmidt's health

13  and safety, which is a requirement for implicating her substantive due process rights.

14         In opposition to the City's motion, plaintiffs argue that Ms. Schmidt has alleged all

15  the elements of the "state created danger" exception.  Plaintiffs assert that Ms. Schmidt has

16  properly stated a § 1983 claim against the City by alleging that the City took affirmative acts

17  by entering into grazing contracts and issuing grazing permits to Hoover, which permitted

18  Hoover to graze bulls and calving stock cattle in WCOS; and also by alleging that the City

19  and Hoover both knew that hikers and unleashed dogs were present in the same area as

20  bulls and calving cattle, and furthermore, knew of the unreasonable risk of harm presented

21  by the situation.

22         Plaintiffs argue that the dangerous nature of bulls is so well-known as to be beyond

23  dispute.  Plaintiffs contend that it is less well-known to the public that a calving cow will act

24  aggressively to protect her calf if she feels that it is being threatened.  Plaintiffs contend

25  that the complaint adequately pleads that the City knew of the dangers posed by the

26  presence of bulls and cows in WCOS, where unleashed dogs and hikers were present, as it

27  alleges that several injury-producing incidents had previously occurred.

28         Plaintiffs argue that despite this knowledge of an unreasonable risk of harm to hikers

5

United States District Court

For the Northern District of California

1   in WCOS, the City continued its policy of allowing unleashed dogs in WCOS, pursuant to

2   Walnut Creek Municipal Code § 11-1.508, and of entering into grazing contracts and

3   issuing grazing permits to ranchers such as Hoover.

4        Plaintiffs assert that in doing so, the City created a danger to Ms. Schmidt that would

5   have not otherwise have existed in WCOS.  Plaintiffs claim that the harm Ms. Schmidt

6   suffered as a result of the City's policy of permitting bulls and cows to roam freely among

7   unleashed dogs and people is "precisely the kind of harm that any person would instantly

8   recognize if presented with a full understanding of the scenario, of the tendency of bulls

9   and calving cattle, and of the history of injury-producing events caused by the bulls and

10   cattle at the WCOS."  Plaintiffs assert that Ms. Schmidt has properly alleged injury to

11   constitutionally protected rights to personal security, liberty, and freedom from bodily

12   invasion, and that she has therefore alleged a valid cause of action under § 1983.

13        The court finds that the motion must be GRANTED.  Title 42 U.S.C. § 1983

14   "provides a cause of action for the 'deprivation of any rights, privileges, or immunities

15   secured by the Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n,

16   496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  The purpose of § 1983 is to deter

17   state actors from using the badge of their authority to deprive individuals of their federally

18   guaranteed rights and to provide relief to harmed parties.  See Wyatt v. Cole, 504 U.S. 158,

19   161 (1992).

20        Section 1983 does not itself create substantive rights, but rather provides a vehicle

21   for individuals to assert violation of rights established elsewhere in the Constitution or

22   federal laws.  Baker v. McCollan, 443 U.S. 137, 140 (1979).  To state a claim under

23   § 1983, a plaintiff must allege facts that show a deprivation of a right, privilege or immunity

24   secured by the Constitution or federal law by a person acting under color of state law.  See

25   West v. Atkins, 487 U.S. 42, 46 (1988).  In this case, it is not disputed that the City of

26   Walnut Creek was acting under color of state law.  Therefore, the question is whether the

27   City's actions deprived Ms. Schmidt of a right, privilege or immunity secured by the

28   Constitution or federal law.

United States District Court

For the Northern District of California

1    Plaintiffs allege that "in entering into grazing contracts that contemplated and

2  permitted Hoover to place bulls and stock cattle into the Acalanes Ridge Open Space

3  section of the WCOS," thereby creating danger from violence to plaintiff Jo Dee Schmidt,

4  the City deprived Ms. Schmidt of her rights under the Fourteenth Amendment to the United

5  States Constitution, including her rights to "liberty and bodily integrity, or other substantive

6  due process rights."  Cplt ¶¶ 33-35.

7    To state a claim against a municipality for a § 1983 violation, the plaintiff must plead

8  facts showing (1) that she possessed a constitutional right of which she was deprived;

9  (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference"

10  to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the

11  constitutional violation."  Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City

12  of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).  Of these factors, the only one that the

13  City addresses is the first one.

14    The Due Process Clause of the Fourteenth Amendments protects persons from the

15  deprivation of their life, liberty and property without due process of law, and has both

16  procedural and substantive components.  Collins v. City of Harker Heights, 503 U.S. 115,

17  125 (1992).  Due process protection in the substantive sense limits what the government

18  may do in both its legislative and executive capacities, regardless of how many procedural

19  safeguards it employs.  County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998).  It

20  protects against a State's interference with personal decisions relating to marriage,

21  procreation, contraception, family relationships, child rearing, and education, as well as with

22  an individual's bodily integrity.  Planned Parenthood v. Casey, 505 U.S. 833, 851 (1992).

23    Substantive due process may be expanded only with the greatest care, and its

24  protection is primarily reserved for liberties deeply rooted in the nation's history and

25  tradition.  Doe v. Tandeske, 361 F.3d 594, 596 (9th Cir. 2004).  It is clearly established that

26  not every state law violation gives rise to a substantive due process violation.  See Lewis,

27  523 U.S. at 847-48 (1998); Shanks v. Dressel, 540 F.3d 1082, 1089 (9th Cir. 2008).

28    In DeShaney, the Supreme Court  Court specifically addressed the question whether

**United States District Court**
For the Northern District of California

1   substantive due process rights afford individuals the right of government protection from

2   third-party conduct.  The Court held that "a State's failure to protect an individual against

3   private violence simply does not constitute a violation of the Due Process Clause."  Id., 489

4   U.S. at 197 (defendant County not liable for Department of Social Services' failure to

5   intervene and protect a child from an abusive father).

6        The Court added that while the Due Process Clause "was intended to prevent

7   government from abusing [its] power, or employing it as an instrument of oppression,"

8   nothing in the language of the clause itself "requires the State to protect the life, liberty, and

9   property of its citizens against invasion by private actors."  Id. at 195-96 (citation and

10  quotation omitted).  Even if a state official refuses to provide protective services that could

11  avert injuries, the government cannot be held liable under § 1983.  Id. at 196.

12       In particular, § 1983 does not impose liability for violations of duties of care arising

13  out of state tort law.  See id. at  201-03 (1989); see also Baker, 443 U.S. at 146.  "[T]he

14  Due Process Clause is not implicated by the lack of due care of an official causing

15  unintended loss or injury to life, liberty, or property.  Davidson v. Cannon, 474 U.S. 344,

16  347 (1986); see also Daniels v. Williams, 474 U.S. 327 (1986).  To state a claim a plaintiff

17  must show a specific constitutional or federal guarantee safeguarding the interests that

18  have been invaded.  See Paul v. Davis, 424 U.S. 693, 697 (1976).

19       Here, plaintiffs have not alleged facts showing that the City deprived Ms. Schmidt of

20  fundamental liberty or bodily integrity rights guaranteed by the Fourteenth Amendment.  At

21  most, they have alleged negligence on the part of the City – possibly a failure to warn of

22  known dangers.

23       Under Deshaney, the City was not directly responsible for the cow/bull attack on Ms.

24  Schmidt.  Moreover, plaintiffs have not established that the "state-created danger"

25  exception to Deshaney applies in this case, because they have not alleged facts showing

26  that the City acted with deliberate indifference to Ms. Schmidt's safety or well-being, and

27  that the City took specific actions that affirmatively placed Ms. Schmidt into a dangerous

28  situation.

United States District Court

For the Northern District of California

1      Since it issued the <u>Wood</u> decision, the Ninth Circuit has further refined the "state-

2 created danger" exception.  In <u>L.W. v. Grubbs</u>, 92 F.3d 894 (9th Cir. 1996), a female

3 registered nurse employed at a medium-security custodial institution for male juvenile

4 offenders was attacked by one of the inmates – a sex offender who had a history of violent

5 assaults against women.  The jury found the defendant liable under § 1983 under a theory

6 of gross negligence, but not under a theory of conscious disregard or deliberate

7 indifference.  The Ninth Circuit rejected the "gross negligence" standard for culpability,

8 concluding that "in order to establish [§ 1983] liability in an action against a state official for

9 an injury to a prison employee caused by an inmate, the plaintiff must show that the state

10 official participated in creating a dangerous situation, and acted with deliberate indifference

11 to the known or obvious danger in subjecting plaintiff to it."  <u>Id.</u> at 900.

12      In <u>Penilla v. City of Huntington Beach</u>, 115 F.3d 707 (9th Cir. 1997), Juan Penilla

13 became ill while on the porch of his home, and neighbors called 911 for assistance.  Two

14 police officers arrived first, found Penilla to be in need of medical attention, cancelled the

15 911 call, moved Penilla into the house, locked the door, and left.  The next day, family

16 members found Penilla dead inside the house.  The Ninth Circuit found that the officers had

17 violated Penilla's due process rights, concluding that the officers' affirmative exercise of

18 state power that created a risk which, but for the affirmative action, would not have existed.

19 <u>Id.</u> at 710.  Specifically, the court held that the officers had clearly placed Penilla in a more

20 dangerous position than the one in which they found him.  <u>Id.</u>

21      In <u>Munger v. City of Glasgow Police Dept.</u>, 227 F.3d 1082 (9th Cir. 2000), police

22 officers in Glasgow, Montana, were called for assistance when Lance Munger, a visibly

23 drunken bar patron, became belligerent inside the bar.  Although it was late at night and

24 below freezing outside, the officers ejected Munger, who was wearing only jeans and a

25 t-shirt.  The officers would not let him drive his truck, and would not let him re-enter the bar.

26 He wandered off into the night, and subsequently died from hypothermia.  The Ninth Circuit

27 held that the officers had affirmatively placed Munger in a position of danger.  <u>Id.</u> at 1087.

28      In <u>Kennedy v. City of Ridgefield</u>, 439 F.3d 1055, 1061 (9th Cir. 2006), and <u>Johnson</u>

v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007), the Ninth Circuit reiterated that the state's failure to protect an individual against private violence can violate the guarantee of due process where the state action affirmatively places the plaintiff in a position of danger – that is, where state action creates or exposes an individual to a danger to which he or she would not otherwise have been exposed.

In Kennedy, the plaintiff reported to a City of Ridgefield police officer that a neighbor had molested her nine-year-old daughter, and also reported the neighbor's known, violent tendencies.  The plaintiff requested that the police notify her prior to making any contact with the neighbor.  Two weeks later, the police officer went to the neighbor's house, and reported the allegations to his wife, without first advising the plaintiff.  Within eight hours of learning of the allegations against him, the neighbor shot and killed plaintiff's husband, and shot and severely wounded plaintiff.  The Ninth Circuit found that in notifying the neighbor and his family of the allegations against the neighbor, the officer had affirmatively created a danger to the plaintiff that she would not otherwise have faced.  Id., 439 F.3d at 1063.

In Johnson, the plaintiffs were assaulted and injured during the course of a riot in Seattle's Pioneer Square on Mardi Gras.  The violent and riotous behavior had begun the previous Friday, continued on Saturday, but diminished on Sunday and Monday when the police presence was stronger.  On Tuesday, however, the crowd was once again out of control.  More than six dozen people were injured, and one person was killed.  Nevertheless, the Ninth Circuit found no evidence that the police had engaged in any affirmative conduct that enhanced the dangers the Pioneer Square plaintiffs exposed themselves to by participating in the Mardi Gras celebration.  Id., 474 F.3d at 641.

In every case in which the court found state-created danger, the state actor played a significant role in creating the dangerous situation: whether by revealing the plaintiff's allegations to the neighbor in Kennedy, ejecting the drunk patron from a bar in Munger, dragging the injured man inside his house in Penilla, assigning the nurse to work alone with a known sex-offender in Grubbs, or stranding a woman in a dangerous area in Wood.  By contrast, in Johnson, the court held that a state official cannot affirmatively place an

10

United States District Court

For the Northern District of California

1  individual in danger by merely failing to act. Id., 474 F.3d at 641.

2      In short, for the "state-created danger" exception to apply, a plaintiff must show

3  conduct by the state actor that rises to something more than a mere failure to act, and must

4  also show some contact or connection with the injured party that creates a causal

5  connection between the state actor's conduct and the increased danger. See, e.g.,

6  Jamison v. Storm, 426 F.Supp. 2d 1144, 1155 (W.D. Wash. 2006).

7      Here, the exception does not apply, as plaintiffs have not alleged facts supporting a

8  claim that the City was deliberately indifferent to a known or obvious danger to Ms.

9  Schmidt.  Plaintiffs assert that despite knowledge of the danger posed to hikers, the City

10  continued to allow unleashed dogs in WCOS in the presence of cows and bulls.  This

11  argument is nothing more than a claim that the City failed to act despite knowing of a

12  specific danger.

13      Moreover, the facts pled in the complaint fail to establish that the City had sufficient

14  contact with Ms. Schmidt to create the necessary causal connection between the City's

15  conduct and the alleged increased danger caused by mixing cows and dogs/hikers.  The

16  Ninth Circuit's opinions discussing the "state-created danger" exception all support a finding

17  that there must be some affirmative action by the state actor directed toward the particular

18  plaintiff who is suing under § 1983 – not just inaction that generally affects the public at

19  large (or even a particular segment of the public).

20      Here, there is no allegation that City officials or employees advised Ms. Schmidt that

21  it was safe to hike in WCOS in the presence of cows/bulls or unleashed dogs, and no

22  allegation that City officials or employees assured Ms. Schmidt that they would provide her

23  with protection from cow/bull attacks while she was hiking in WCOS.  Plaintiffs allege no

24  affirmative act on the part of the City that directly placed Ms. Schmidt in danger, thereby

25  depriving Ms. Schmidt of her constitutional rights.

26      The facts alleged in the complaint do not support a claim of a substantive due

27  process violation, and that there is no way that plaintiffs can amend the complaint to do so.

28  Thus the dismissal is WITH PREJUDICE.

United States District Court

For the Northern District of California

C.     Hoover's Motion

As noted above, Hoover argues that the § 1983 claim should be dismissed for failure to state a claim, and that the complaint should then be dismissed for lack of subject matter jurisdiction because Ms. Schmidt did not have a federal claim under § 1983 as of the time the complaint was filed.

In opposition, plaintiffs argue that Hoover's motion to dismiss the § 1983 cause of action is improper because the complaint clearly indicates that the § 1983 claim is brought by Ms. Schmidt against the City of Walnut Creek only.  Plaintiffs also argue that Hoover's motion to dismiss the complaint for lack of subject matter jurisdiction is improper because it is based solely on the asserted failure to state a claim under § 1983.

The court finds that the motion must be DENIED.  Plaintiff is correct that Hoover cannot move to dismiss the third cause of action, as that claim is not asserted against him.

## CONCLUSION

In accordance with the foregoing, the third cause of action brought under 42 U.S.C. § 1983 is dismissed for failure to state a claim.  The court declines to exercise jurisdiction over the supplemental state law claims, pursuant to 28 U.S.C. § 1367(c)(3).  Accordingly, the action is DISMISSED.

The date for the hearing on the motions, previously set for Wednesday, April 22, 2009, is VACATED.

**IT IS SO ORDERED.**

Dated: April 15, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge

12